# Exhibit A

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

In re:                                                    :

                                                          :    Chapter 11

G.A.F. SEELIG, INC.                                       :

                                                          :    Case No. 17-46968 (ESS)

                              Debtor.                     :

---------------------------------------------------------------- X

---

## DEBTOR'S SECOND AMENDED PLAN OF LIQUIDATION

---

Dated:  April 2, 2021

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**

Sean C. Southard
Fred Stevens
Lauren C. Kiss
200 West 41st Street, 17th Floor
New York, NY 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

*Counsel to G.A.F. Seelig, Inc., Debtor and*
*Debtor-in-Possession*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................1

SUMMARY .............................................................................................................1

ARTICLE I – DEFINTIONS AND INTERPRETATION ........................................................2

    Section 1.1 – Definitions.................................................................................2

    Section 1.2 – Rules of Interpretation ..............................................................10

    Section 1.3 – Application of Definitions and Rules of Construction Contained in the Bankruptcy Code ............................................................................................10

    Section 1.4 – Other Terms ..............................................................................10

ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS........................................10

    Section 2.1 – Unclassified Claims ..................................................................10

    Section 2.2 – Criterion of Class .....................................................................10

    Section 2.3 – Classified Claims and Equity Interests .......................................10

ARTICLE III – TREATMENT OF UNCLASSIFIED CLAIMS................................................11

    Section 3.1 – Administrative Expense Claims and Professional Fee Claims ..................11

    Section 3.2 – Priority Tax Claims...................................................................12

    Section 3.3 – Priority WARN Claim ...............................................................12

ARTICLE IV – CLASSIFIED CLAIMS AND EQUITY INTERESTS ......................................12

    Section 4.1 – Treatment of Classified Claims and Equity Interests .................................12

        (a) Class 1 – General Unsecured Claims ............................................12

        (b) Class 2 – Equity Interests ...........................................................13

    Section 4.2 – Reservation of Rights Regarding Claims.....................................14

ARTICLE V – ACCEPTANCE OR REJECTION OF THE PLAN .........................................14

    Section 5.1 – Classes Entitled to Vote.............................................................14

Section 5.2 – Class Acceptance Requirement.................................................................14

Section 5.3 – Deadline to Seek Temporary Allowance of Disputed Claims .....................14

ARTICLE VI – IMPLEMENTATION.............................................................................14

Section 6.1 – Appointment of Plan Administrator............................................................14

Section 6.2 – Retention of Professionals ........................................................................15

Section 6.3 – Plan Administrator Reserve ......................................................................15

Section 6.4 – Monthly Fee and Expense Reports ...........................................................15

Section 6.5 – Corporate Action......................................................................................16

Section 6.6 – Closing of the Chapter 11 Case ................................................................16

Section 6.7 – Winding Down of Affairs ..........................................................................16

Section 6.8 – Powers and Duties of Plan Administrator...................................................16

Section 6.9 – Distributions to Holders of Claims and Equity Interests ............................18

(a) Administrative Claim and Professional Fee Bar Date.......................................18

(b) Automatic Disallowance and Expungement of Certain Claims.........................18

(c) Deadline to Object to Claims ..........................................................................18

(d) Method of Distribution on Allowed Claims......................................................18

Section 6.10 – Miscellaneous Distribution Provisions .....................................................21

(a) Preservation and Application of Insurance........................................................21

(b) Record Date for Distributions to Holders of Claims.........................................21

(c) Disputed Claims .............................................................................................21

(d) Resignation or Removal of Plan Administrator ................................................21

(e) No Agency Relationship...................................................................................21

(f) Compensation to the Plan Administrator..........................................................22

ARTICLE VII – EFFECT OF THE PLAN ON CLAIMS AND INTERESTS............................22

Section 7.1 – Binding Effect...........................................................................................22

Section 7.2 – Term of Injunctions or Stays.........................................................................22

Section 7.3 – Preservation of Causes of Action.................................................................22

Section 7.4 – Injunctions....................................................................................................23

    (a) Satisfaction of Claims..............................................................................................23

    (b) Scope of Injunction .................................................................................................23

    (c) Cause of Action Injunction......................................................................................23

Section 7.5 – Compromise of Controversies .....................................................................23

Section 7.6 – Post-Confirmation Activity..........................................................................24

ARTICLE VIII – EXECUTORY CONTRACTS ............................................................................24

Section 8.1 – Executory Contracts and Unexpired Leases ................................................24

Section 8.2 – Rejection Damages Bar Date .......................................................................24

Section 8.3 – Effect of Post-Confirmation Rejection ........................................................24

ARTICLE IX – OCCURRENCE OF EFFECTIVE DATE..............................................................25

Section 9.1 – Conditions to Occurrence of Effective Date ................................................25

ARTICLE X – CONFIRMABILITY AND SEVERABILITY .........................................................25

Section 10.1 – Confirmability and Severability of Plan ....................................................25

ARTICLE XI – ADMINISTATIVE PROVISIONS ......................................................................25

Section 11.1 – Retention of Jurisdiction............................................................................25

Section 11.2 – Governing Law ..........................................................................................27

Section 11.3 – Effectuating Documents, Further Transactions ..........................................27

Section 11.4 – Waiver of Bankruptcy Rules 3020(e) and 7062 ........................................27

Section 11.5 – No Discharge ..............................................................................................27

Section 11.6 – Headings ....................................................................................................27

Section 11.7 – Payment of U.S. Trustee Fees and Other Statutory Fees...........................27

Section 11.8 – Governmental Carve-Out............................................................................28

Section 11.9 – Disposal of Books and Records ................................................................28

Section 11.10 – Amendments ..........................................................................................28

    (a) Pre-Confirmation Amendment ..........................................................................28

    (b) Post-Confirmation Amendment Not Requiring Re-solicitation.......................28

    (c) Post-Confirmation Amendment Requiring Re-solicitation ..............................28

Section 11.11 – Successors and Assigns..........................................................................29

Section 11.12 – Confirmation Order and Plan Control.....................................................29

Section 11.13 – Further Action ........................................................................................29

Section 11.14 – Notices ...................................................................................................29

Section 11.15 – Substantial Consummation ....................................................................30

Section 11.16 – Deemed Acts ..........................................................................................30

## INTRODUCTION

G.A.F. Seelig, Inc., debtor and debtor in possession (the "Debtor"), proposes the following amended plan of liquidation (the "Plan") pursuant to section 1121 of the Bankruptcy Code. The Debtor is the proponent of the Plan within the meaning of section 1129 of Title 11 of the United States Code (the "Bankruptcy Code"). A detailed discussion of the Debtor's history, business, and other pertinent information, as well as a summary and analysis of the Plan, are set forth in the Second Amended Disclosure Statement, for which approval will be sought simultaneously with seeking confirmation of this Plan (the "Disclosure Statement"). Any agreements and documents referenced in the Plan and/or Disclosure Statement are incorporated as if set forth in full therein and will be filed with the United States Bankruptcy Court for the Eastern District of New York.

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019 AND THIS PLAN, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THIS PLAN PRIOR TO ITS EFFECTIVE DATE.**

## SUMMARY

The Plan proposes to appoint an independent Plan Administrator[1], who will pay creditors of the Debtor from the Debtor's Assets which have been liquidated and converted into Cash, and will be charged with complete and total authority over the Debtor's Estate subject to the terms of this Plan. The Plan provides for one (1) Class consisting of all General Unsecured Claims and one (1) Class of Equity Interest holders. Creditors holding Allowed General Unsecured Claims will receive a Pro Rata share of the Cash available for Distribution from the General Unsecured Claims Pool within ten (10) business days of the Rejection Damages Bar Date, with a full reserve of the Pro Rata share of the Cash on account of any Disputed General Unsecured Claims. A final Distribution to Holders of Allowed General Unsecured Claims will be made within ten (10) business days of the resolution of any remaining activities of the Plan Administrator.

This Plan also provides for the payment in full of Allowed Administrative Expense Claims and Allowed Priority Claims, including the Priority WARN Claim, within ten (10) business days of the Effective Date. Professional Fee Claims will be paid as soon as practicable after such Professional Fee Claim is Allowed by the Bankruptcy Court. All capitalized terms used in the Plan shall have the same meaning as the terms defined in Article I (Definitions and Interpretation) of this Plan of Liquidation.

The Plan amends those prior plan sof the Debtor dated December 8, 2020 and March 30, 2021. All Creditors and parties in interest should review the Plan in its entirety, but the following list summarizes the key differences between the Plan and its predecessor:

- Plan Administrator. The Plan provides for the appointment of an independent Plan Administrator with full power and control over the Debtor and its estate. Upon the Plan Administrator's appointment, the Debtor's management shall cease to have any

---

[1] Capitalized Terms used herein are defined in Article I below.

power or control over the Debtor or its Assets.  The Plan Administrator will have the ability to, among other things, investigate the financial affairs of the Debtor, commence or resolve claims by or against the Debtor and its Estate, and make distributions to Creditors.  In particular, the Plan contemplates that the Plan Administrator will undertake an independent review of the Debtor's books and records and, if and to the extent warranted, pursue recoveries on account of avoidable transfers not timely pursued.

- <u>Selection of Plan Administrator</u>.  The Debtor has sought the input of all Creditors active in the Debtor's case with respect to the selection of the Plan Administrator to ensure that such person is truly independent.

- <u>Immediate Distribution to Creditors with Allowed Claims</u>.  Under the Plan, holders of Allowed Administrative Expense Claims, Allowed Professional Fee Claims and Allowed Priority Claims will be paid almost immediately upon the Effective Date or shortly thereafter.  In addition, holders of Allowed General Unsecured Claims will receive an interim Distribution within ten (10) business days after the Rejection Damages Bar Date.  Under the prior plan, holders of Allowed General Unsecured Claims had to wait until all such claims were either Allowed or Disallowed before receiving a Distribution.

- <u>Removal of all Releases and Exculpations</u>.  This Plan removes any of the standard releases and exculpations to insiders, proponents of the Plans, and Professionals that were provided by the prior plan.

All Creditors and Equity Interest holders should refer to Article IV of the Plan for information regarding the precise treatment of their Claims.  A Disclosure Statement that provides more detailed information regarding this Plan and the rights of Creditors and Equity Interest holders has been circulated with this Plan. **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

**Section 1.1        Definitions.**

The following terms, when used in this Plan, the Disclosure Statement (except as otherwise provided therein) or any subsequent amendments or modifications thereof, and in addition to those terms defined in the text of the Plan, shall have the respective meanings hereinafter set forth.

1.1.    "<u>Administrative Expense</u>" means any expense under sections 503(b) and 507(a)(2) of the Bankruptcy Code, excluding Professional Fee Claims, but including, without limitation: (a) the actual and necessary costs and expenses incurred by the Debtor after the Petition Date of preserving the Estate or operating the Debtor's business; (b) Allowed Claims pursuant to section

503(b)(9) of the Bankruptcy Code; and (c) all U.S. Trustee Fees.

1.2. "<u>Administrative Expense Claim</u>" means any Claim for an Administrative Expense.

1.3. "<u>Administrative Expense Claim Bar Date Order</u>" means the order of the Bankruptcy Court dated March 19, 2018 [ECF Doc. No. 153] that established May 15, 2018, the date fixed by the Bankruptcy Court as the last date by which all Creditors must file a proof of Claim against the Debtor for an Administrative Expense arising on or prior to March 31, 2018, subject to certain exceptions listed in the order

1.4. "<u>Administrative Expense Claim Subject to Bar Date Order</u>" means any Claim for an Administrative Expense that arose on or prior to March 31, 2018 subject to the Administrative Expense Claim Bar Date Order.

1.5. "<u>Administrative Expense Claim Not Subject to Bar Date Order</u>" means any Claim for an Administrative Expense that arose after March 31, 2018 or is otherwise not subject to the Administrative Expense Claim Bar Date Order, including, without limitation, Professional Fee Claims.

1.6. "<u>Allowed</u>" with respect to a Claim means the extent to which a Claim: (a) is not disallowed or expunged by stipulation or Final Order; (b) is not objected to within the period fixed by the Plan or established by the Bankruptcy Court, if the Claim (i) was scheduled by the Debtor pursuant to the Bankruptcy Code and the Bankruptcy Rules  and not listed as contingent, unliquidated, or disputed, or (ii) was timely filed (or deemed timely filed) pursuant to the Bankruptcy Code, the Bankruptcy Rules, or any applicable orders of the Bankruptcy Court; (c) for which an objection has been filed, but such objection has been withdrawn or denied by a Final Order (but only to the extent such Claim has been allowed); (d) determined to be valid by the Plan Administrator; (e) for which a request for estimation has been interposed, but such request has been withdrawn or approved by a Final Order (but only to the extent such Claim has been allowed); or (f) is otherwise allowed by Final Order, including, without limitation, the Confirmation Order, after notice and a hearing.  A proof of Claim that is not timely filed (or not deemed timely filed) shall not be "Allowed" for purposes of distribution or voting under the Plan.

1.7. "<u>Assets</u>" means all legal or equitable pre-petition and post-petition interests of the Debtor in any real or personal property of any nature whatsoever, including, without limitation, all property of the Estate pursuant to section 541 of the Bankruptcy Code, Cash, Available Cash, Sale Proceeds, Causes of Action, accounts receivable, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of all of the foregoing.

1.8. "<u>Available Cash</u>" means, (i) any *de minimis* Distributions; (ii) any amount represented by an undeliverable Distribution; and (iii) any voided checks.

1.9. "<u>Avoidance Claims</u>" means any causes of action to avoid or recover a transfer of property of any of the Estate or an interest of any of the Debtor in property, including, without limitation, actions arising under sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable federal, state or common law.

1.10.    "<u>Bankruptcy Code</u>" means title 11 of the United States Code §§ 101 *et seq.*, as amended,  in effect and applicable to the Chapter 11 Case concerning the Debtor.

1.11.    "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Eastern District of New York or such other court having jurisdiction over the Chapter 11 Case.

1.12.    "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States, as amended, in effect and applicable to the Chapter 11 Case, including the local rules of the Bankruptcy Court, as amended from time to time.

1.13.    "<u>Bar Date</u>" means (i) March 22, 2018, the date fixed by the Bankruptcy Court as the last date by which all Persons, other than holders of Allowed Administrative Expense Claims, must have filed proofs of claim against the Debtor, (ii) June 28, 2018, the date fixed by the Bankruptcy Court as the last date by which all governmental entities must have filed proofs of claim against the Debtor, and (iii) September 7, 2018, the date fixed by the Bankruptcy Court as the last date by which all Persons, other than holders of Allowed Administrative Expenses Claims, whose scheduled Claims were amended by the Debtor on July 11, 2018, must have filed proofs of claim against the Debtor, unless the Bankruptcy Court has set a different date by which a specific Creditor must file a proof of Claim, in which case it means, for the specific Creditor, such different date set by the Bankruptcy Court in the order approving such Bar Date or otherwise.

1.14.    "<u>Business Day</u>" means any day other than a Saturday, Sunday or other day on which commercial banks in New York City are required or authorized by law to be closed.

1.15.    "<u>Cash</u>" means cash and cash equivalents in U.S. dollars, including, but not limited to, bank deposits, checks, and other similar items.

1.16.    "<u>Causes of Action</u>" means any and all Claims, rights, actions, choses in action, suits, causes of action, controversies, liens, judgments and damages belonging to the Debtor or its Estate and any and all liabilities, obligations, covenants, undertakings and debts owing to the Estate, whether arising prior to, or after, the Petition Date and in each case whether known or unknown, in law, equity or otherwise, including, without limitation, receivables and those Claims and actions to avoid or recover pre-petition or post-petition transfers of money or property pursuant to applicable bankruptcy and non-bankruptcy law.

1.17.    "<u>Chapter 11 Case</u>" means the case commenced by the Debtor on December 30, 2017 under chapter 11 of the Bankruptcy Code, administered under case number 17-46968-ess.

1.18.    "<u>Claim</u>" means any claim against the Debtor that arose prior to or on the Effective Date, including any: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or (c) any other claim as defined by section 101(5) of the Bankruptcy Code.

1.19.    "<u>Class</u>" means a category of Claims or Equity Interests described in Article II hereof.

1.20.    "<u>Confirmation</u>" means the Bankruptcy Court's confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code.

1.21.    "<u>Confirmation Date</u>" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket corresponding to the Chapter 11 Case.

1.22.    "<u>Confirmation Hearing</u>" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider Confirmation.

1.23.    "<u>Confirmation Order</u>" means the Order of the Bankruptcy Court confirming this Plan, or any amendment thereto, pursuant to section 1129 of the Bankruptcy Code, and any findings of fact and conclusions of law contained in the Confirmation Order or a separate document entered substantially contemporaneously therewith.

1.24.    "<u>Creditor</u>" means any Person who: (a) holds a Claim against the Debtor that arose prior to the Petition Date; (b) holds a Claim against the Debtor, which arose after the Petition Date, other than an Administrative Expense Claim of the type specified in Bankruptcy Code section 503(b); or (c) holds a Claim against the Debtor of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(i).

1.25.    "<u>Debtor</u>" means debtor G.A.F. Seelig, Inc., both before and after the Petition Date as a debtor-in-possession pursuant to section 1107 of the Bankruptcy Code.

1.26.    "<u>Disallowed</u>" means, when referring to a Claim or Equity Interest, a Claim (including a claim listed by the Debtor in its schedules) or Equity Interest, or any portion of a Claim or Equity Interest, which has been disallowed or expunged by a Final Order.

1.27.    "<u>Disclosure Statement</u>" means the Second Amended Disclosure Statement, and all exhibits annexed thereto relating to the Plan, filed in connection with the Chapter 11 Case pursuant to section 1125 of the Bankruptcy Code.

1.28.    "<u>Disqualification Motion</u>" means the motion of the U.S. Trustee seeking an order (i) disqualifying Weltman & Moskowitz, LLP ("<u>W&M</u>") as attorneys for the Debtor, (ii) vacating Weltman & Moskowitz, LLP's retention order, and (iii) disallowing and directing disgorgement of all funds received from the Debtor [Docket No. 515].

1.29.    "<u>Disputed</u>" means a Claim that is neither Allowed nor Disallowed, and is the subject of a dispute under the Plan or as to which Claim either the Debtor or Plan Administrator, as applicable, has interposed a timely objection and/or a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 or other applicable law, which dispute, objection, and/or request for estimation has not been withdrawn or determined by entry of a Final Order, and any Claim, proof of which was required to be filed by order of the Bankruptcy Court, but as to which a proof of claim was not timely or properly filed (or deemed timely or properly filed).

1.30. "<u>Disputed Claim Reserve</u>" means the reserve of funds on account of any Disputed General Unsecured Claims that must be maintained by the Plan Administrator until such Claims are either Allowed or Disallowed.

1.31. "<u>Distribution</u>" means any payments made pursuant to the terms of this Plan.

1.32. "<u>Distribution Address</u>" means the address set forth in the applicable proof of claim, as such address may have been updated pursuant to Bankruptcy Rule 2002(g). If no proof of claim is or has been filed with respect to a particular Claim, "Distribution Address" means the address set forth in the Debtor's schedules, as such address may have been updated pursuant to Bankruptcy Rule 2002(g).

1.33. "<u>Distribution Date</u>" means any date on which a Distribution is made to holders of Allowed Claims under the Plan, or as otherwise agreed. Aside from payments to holders of Unclassified Claims described herein, the Plan proposes an interim Distribution within ten (10) business days after the Rejection Damages Bar Date to all Allowed Claims in Class 1, and a final Distribution once all matters are concluded by the Plan Administrator and all Claims are deemed Allowed or Disallowed.

1.34. "<u>Effective Date</u>" means the date which is fourteen (14) days after the date the Confirmation Order becomes a Final Order.

1.35. "<u>Equity Interest</u>" means any share, capital stock, partnership, member or similar interest in any entity, and any option, warrant, right or security (including debt securities) convertible, exchangeable or exercisable therefor, in the Debtor, as of the Petition Date.

1.36. "<u>Estate</u>" means the Debtor's bankruptcy estate created pursuant to section 541 of the Bankruptcy Code on the Petition Date.

1.37. "<u>Fee Application</u>" means the final fee application and/or an application for payment of reasonable fees and expenses filed under section 503(b) of the Bankruptcy Code by any parties seeking payment of Professional Fee Claims and/or reimbursement of expenses, as applicable, which shall be filed in accordance with Section 3.1 hereof.

1.38. "<u>Final Distribution</u>" means the final distribution of Cash to be made by the Plan Administrator pursuant to the Plan.

1.39. "<u>Final Order</u>" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction as to which the time to appeal, petition for *certiorari*, or move for reargument or rehearing has expired, and as to which no appeal, petition for *certiorari* or other proceedings for reargument or rehearing shall then be pending; *provided, however*, if an appeal, or writ of *certiorari*, reargument or rehearing thereof has been filed or sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for reargument or rehearing shall have expired; provided, further, that the possibility that a motion under Rule 59 or Rule 60

of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.40.    "General Unsecured Claim" means a Claim that is not an Administrative Expense Claim, a Professional Fee Claim, a Priority Tax Claim, a Priority Claim or Secured Claim.

1.41.    "General Unsecured Claims Pool" means the funds remaining in the Estate after all Administrative Claims, Professional Fee Claims, U.S. Trustee Fees, and Priority Claims have been paid in full and the Plan Administrative Reserve is funded.

1.42.    "Impaired" means any Class of Claims or Equity Interests whose legal or equitable rights are altered within the meaning of section 1124 of the Bankruptcy Code.

1.43.    "Insider" means any Person defined as an insider under section 101(31) of the Bankruptcy Code.

1.44.    "Interim Distribution" means the interim distribution to Holders of Allowed General Unsecured Claims as provided for in this Plan.

1.45.    "Pension Funds" means the Local 584 Pension Trust and Milk Industry Office Employees Pension Fund.

1.46.    "Pension Funds Claims Objection" means the objections to the Claims of the Pension Funds filed by the Debtor on August 28, 2018 and December 20, 2018 [ECF Doc. Nos. 222 and 274].

1.47.    "Person" means any individual, corporation, partnership, association, joint venture, limited liability company, limited liability partnership, estate, trust, unincorporated organization or governmental unit or subdivision thereof or other Entity as defined in section 101(15) of the Bankruptcy Code.

1.48.    "Petition Date" means December 30, 2017, the date the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

1.49.    "Plan" means this plan of liquidation and any exhibits annexed hereto and any documents delivered in connection herewith, as the same may be amended or modified from time to time by any duly authorized amendment or modification.

1.50.    "Plan Administrator" means Alan D. Halperin or any successor or replacement under the terms of this Plan.

1.51.    "Plan Administrator Agreement" means that certain agreement in substantially the same form as that annexed hereto as Exhibit 1, between the Plan Administrator and the Debtor pursuant to which the Plan Administrator shall implement the terms of the Plan by, among other things, making certain Distributions under the Plan.

1.52.    "Plan Administrator Reserve" means the $100,000 amount from funds of the

Debtor available at confirmation of the Plan reserved for the Plan Administrator to pay the costs of winding up the affairs of the Debtor.  The only other source of payment for the Plan Administrator and his or her professionals shall be from additional recoveries by the Estate obtained after the confirmation of the Plan.

1.53.    "<u>Plan Proponent</u>" is the Debtor.

1.54.    "<u>Priority Claim</u>" means any Claim, other than an Administrative Expense Claim, a Professional Fee Claim or a Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.55.    "<u>Priority Tax Claim</u>" means any Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.56.    "<u>Priority WARN Claim</u>" means the Claim filed by the New York State Department of Labor under the New York State Worker Adjustment and Retraining Notification Act ("<u>WARN</u>") under New York State Labor Law section 860 *et seq*., in the nature of back pay and benefits for a twenty-two (22) day WARN violation period as determined by the New York State Department of Labor (in accordance with Labor Law sections 860-b and 860f(7).

1.57.    "<u>Pro Rata</u>" means, at any time, the proportion that an Allowed Claim bears to the aggregate amount of all Claims in a particular Class at such time, including Disputed Claims at such time (a) as calculated by the Plan Administrator on or before any Distribution Date; or (b) as determined or estimated by the Bankruptcy Court.

1.58.    "<u>Professionals</u>" means  a Person (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.59.    "<u>Professional Fee Claims</u>" means any Claim of (a) a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date, but prior to and including the Effective Date, when and to the extent any such Claim is Allowed by the Bankruptcy Court pursuant to sections 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code, or (b) a Person seeking compensation and reimbursement pursuant to section 503(b)(4) of the Bankruptcy Code.

1.60.    "<u>Professional Fee Claims Deadline</u>" means the deadline for all Professionals or other Persons to file an application for final allowance of compensation and reimbursement of Professional Fee Claims for services rendered before the Effective Date, which deadline shall be the date which is thirty (30) days after the Effective Date.

1.61.    "<u>Professional Fee Reserve</u>" means the reserve in the amount of all Professional Fee Claims to be maintained until such Claims are Allowed or Disallowed.

1.62.    "Rejection Damages Bar Date" means the date established for the filing of Claims in connection with the rejection of any unexpired lease or executory contract.  Unless otherwise ordered by the Bankruptcy Court, the Rejection Damages Bar Date shall the date that is thirty (30) days after service of the notice of entry of the Confirmation Order.

1.63.    "Released Party" means the Debtor's Professionals, advisors, attorneys, Representatives, officers, trustees, employees (acting in such capacity), and directors but only in their respective capacities as such.

1.64.    "Representative" means any Person who is authorized to act on behalf of another.

1.65.    "Retained Causes of Action" means all Avoidance Claims and Causes of Action that exist on the Effective Date.

1.66.    "Seelig Claims Objection" means the objections filed by the Pension Funds to the claims filed by Wendy and Rodney Seelig [ECF Doc. Nos. 324 and 325].

1.67.    "Sale Order" means the *Order Pursuant to Sections 105 and 363(b) of the Bankruptcy Code, Federal Rule of Bankruptcy Procedure 6004(A) and Local Bankruptcy Rule 6004-1 Authorizing Debtor to conduct a Public and Online Auction to Sell Certain Assets Free and Clear of All Liens, Claims and Encumbrances, Approving the Terms and Conditions of Sale, and Granting Related Relief* [ECF Doc. No. 154].

1.68.    "Sale Proceeds" means the proceeds of sale of Debtor's equipment, inventory and other assets sold at auction pursuant to the Sale Order.

1.69.    "Temporarily Allowed" means Claims that are Disputed but have been temporarily allowed by the Bankruptcy Court for voting purposes pursuant to Bankruptcy Rule 3018(a).

1.70.    "Unimpaired" means, when used in reference to a Claim or Equity Interest or a class thereof, a Claim or Equity Interest or a class thereof that is not impaired within the meaning of § 1124 of the Bankruptcy Code.

1.71.    "U.S. Trustee" means the United States Trustee for Region 2.

1.72.    "U.S. Trustee Fees" means all fees and charges assessed against the Estate by the U.S. Trustee and due pursuant to section 1930 of title 28 of the United States Code, together with interest, if any, pursuant to section 3717 of title 31 of the United States Code.

1.73.    "U.S. Trustee Fees Reserve" means $40,000 or such other amount that the Plan Administrator estimates in good faith will be the amount of U.S. Trustee Fees due to the U.S. Trustee up to entry of a final decree in the Debtor's Bankruptcy Case.

1.74.    "Unclassified Claims" means Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims.

### Section 1.2    Rules of Interpretation.

Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural number and *vice versa*, as appropriate, and words denoting one gender shall include the other gender. The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

### Section 1.3    Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan, unless a different definition is given in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  A term used in the Plan that is not defined shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

### Section 1.4    Other Terms.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

## ARTICLE II. CLASSIFICATION OF CLAIMS AND INTERESTS

### Section 2.1    Unclassified Claims.

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims and Priority WARN Claim shall not be classified under the Plan, but instead shall be treated separately, as Unclassified Claims, on the terms set forth in Article III of the Plan.

### Section 2.2    Criterion of Class.

A Claim is in a particular Class only to the extent that the Claim qualifies within the description of that Class, and is in a different Class to the extent that the remainder of such Claim qualifies within the description of the different Class.

### Section 2.3    Classified Claims and Equity Interests.

The Classified Claims against and Equity Interests in the Debtor are:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | General Unsecured Claims | Impaired | Yes |
| Class 2 | Equity Interests | Impaired | No |

# ARTICLE III.

# TREATMENT OF UNCLASSIFIED CLAIMS

As set forth below, the Administrative Expense Claims, Professional Fee Claims and Priority Claims shall be treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(c) of the Bankruptcy Code, respectively.

### Section 3.1    Administrative Expense Claims and Professional Fee Claims.

(i)    **Administrative Expense Claims**. Subject to the Administrative Expense Claim Bar Date and other provisions in the Plan, and except to the extent the Plan Administrator and the holder of an Allowed Administrative Expense Claim agree to different and less favorable treatment, the Plan Administrator shall pay to each holder of an Allowed Administrative Expense Claim, in full satisfaction and release of such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim on the later of (i) the tenth (10th) Business Day following the Effective Date or (ii) the first Business Day after the date upon which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim to the extent such Administrative Expense Claim requires the Bankruptcy Court's approval for allowance or as soon thereafter as is practicable.

(i)    **Professional Fee Claims.**    All Professionals or other Persons requesting compensation or reimbursement of Professional Fee Claims for services rendered before the Effective Date (including compensation requested by any Professional or other entity for making a substantial contribution in the Chapter 11 Case) shall file an application for final allowance of compensation and reimbursement of expenses no later than the Professional Fee Claims Deadline. Objections to applications of Professionals or other entities for compensation or reimbursement of expenses must be filed no later than twenty-one (21) days after any such application is filed.  All compensation and reimbursement of expenses allowed by the Bankruptcy Court shall be paid by the Plan Administrator to the applicable Professional or other entities requesting compensation or reimbursement of Professional Fee Claims as soon as is practicable after any such Professional Fee Claims are Allowed.

By no later than the third (3rd) Business Day following the Effective Date, each Professional or other Person that intends to assert a Professional Fee Claim shall inform the Plan Administrator in writing of the amount of their outstanding Professional Fee Claim.  The Plan Administrator shall establish the Professional Fee Reserve equal to the amount of Professional Fee Claims.  To the extent that any Professional Fee Claim is reduced or Disallowed by Order of the Bankruptcy Court, the portion of the Professional Fee Reserve attributable to the amount of the reduction or disallowance shall be added to and become part of the General Unsecured Claims Pool.

(ii)    **U.S. Trustee Fees.** The Debtor and/or Plan Administrator, as applicable, shall pay all applicable U.S. Trustee Fees, in accordance with the terms of this Plan, until such time as the Bankruptcy Court enters an order (a) dismissing the Chapter 11 Case, (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (c) of final decree closing the Chapter 11 Case.  The Plan Administrator shall establish the U.S. Trustee Fees Reserve from which U.S.

Trustees will be paid. To the extent that the U.S. Trustee Fees Reserve is later determined to be insufficient to pay all outstanding U.S. Trustee Fees, then the Plan Administrator shall pay the U.S. Trustee fees first from the General Unsecured Claims Pool to the extent funds are available, and then from the Plan Administrator Reserve.

### Section 3.2    Priority Tax Claims.

Subject to other provisions in the Plan, and except to the extent the Debtor or the Plan Administrator, as applicable, and the holder of an Allowed Priority Tax Claim agree to different and less favorable treatment, the Plan Administrator shall pay, in full satisfaction and release of such Claim, to each holder of an Allowed Priority Tax Claim, Cash, an amount equal to such Allowed Priority Tax Claim, on the later of (i) the tenth (10th) Business Day following the Effective Date or (ii) the first Business Day after the date upon which such Priority Tax Claim becomes an Allowed Priority Tax Claim or as soon thereafter as is practicable.

### Section 3.3 Priority WARN Claim.

Subject to other provisions in the Plan, the Plan Administrator shall pay to the New York State Department of Labor (the "DOL"), in full satisfaction and release of such Proof of Claim numbered 104, $350,265.85, or such other amount as may be determined by the Bankruptcy Court, in Cash by the tenth (10th) Business Day following the Effective Date or as soon thereafter as is practicable pursuant to the Order Approving Stipulation of Settlement With New York State Department of Labor [ECF Doc. No. 310]. The DOL shall be responsible, as provided in the DOL Settlement, for distributing the funds to individual claimholders.

## ARTICLE IV.

## CLASSIFIED CLAIMS AND EQUITY INTERESTS

### Section 4.1    Treatment of Classified Claims and Equity Interests.

The Classes of Claims against and Equity Interests in the Debtor shall be treated as follows:

(a)    **Class 1 – General Unsecured Claims.**

Class 1 General Unsecured Claims are Impaired and, as such, each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

Holders of Allowed Class 1 Claims shall be paid:

(i)    Interim Distribution. Holders of Allowed Class 1 Claims shall be paid a Pro Rata Interim Distribution on the later of (i) the tenth (10th) Business Day following the Rejection Damages Bar Date or (ii) the first Business Day after the date upon which such General Unsecured Claim becomes an Allowed General Unsecured Claim or as soon thereafter as is practicable.

The total amount distributed to Allowed Class 1 Claims in the Interim Distribution shall be determined as follows: All Cash in the Estate at the time of the Interim Distribution, less the amount of Allowed Administrative Expense Claims, less the amount of Priority Tax Claims, less the amount of the Priority WARN Claim, less the Professional Fee Reserve, less the U.S. Trustee Fees Reserve, less the Disputed Claim Reserve, less the Plan Administrator Reserve.

The Plan Administrator shall establish and maintain a Disputed Claim Reserve equal to the amount the Holders of any Disputed Class 1 Claims would receive in the Interim Distribution if such Claim were Allowed in full.  Upon determination of the amount of any Disputed General Unsecured Claim by Final Order of the Bankruptcy Court, the Plan Administrator shall pay from the Disputed Claim Reserve such Holder's Interim Distribution as soon as is practicable.  Any portion of the Disputed Claim Reserve attributable to a Disputed General Unsecured Claim, or portion of such claim, that is ultimately Disallowed by the Bankruptcy Court will be returned to the General Unsecured Claims Pool.

If circumstances warrant in the Plan Administrator's sole discretion, the Plan Administrator may make additional Interim Distribution(s) consistent with this Plan.

(ii) <u>Final Distribution</u>.  At the conclusion of the Plan Administrator's activities and obligations under this Plan, the Plan Administrator shall increase the General Unsecured Claims Pool by any unused portion of the Plan Administrator Reserve, Professional Fee Reserve, U.S. Trustee Fees Reserve and Disputed Claim Reserve, plus any additional funds recovered by the Plan Administrator, and shall make a Pro Rata Final Distribution to the Holders of Allowed Class 1 Claims.

(b)     **Class 2 – Equity Interests.**

Class 2 Equity Interests are Impaired as they will receive no Distribution under the Plan. Class 2 Equity Interests are deemed to reject the Plan and, as such, are not entitled to vote to accept or reject the Plan.

On the Effective Date, all Class 2 Equity Interests will be deemed canceled, null and void and of no force and effect.

**Section 4.2     Reservation of Rights Regarding Claims.**

Except as otherwise explicitly provided in the Plan, nothing shall affect, as applicable, the Debtor or Plan Administrator's rights, defenses, and counterclaims, both legal and equitable, with respect to any Claims, including, but not limited to, all rights of setoff or recoupment.

## ARTICLE V.

## ACCEPTANCE OR REJECTION OF THE PLAN

**Section 5.1     Classes Entitled to Vote.**

Class 1, comprised of General Unsecured Claims, is the only Class entitled to vote to accept or reject the Plan. All holders of Allowed and Temporarily Allowed General Unsecured Claim shall be entitled to vote on the Plan.

**Section 5.2     Class Acceptance Requirement.**

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims and Temporarily Allowed Claims in such Class that have voted on the Plan.

**Section 5.3     Deadline to Seek Temporary Allowance of Disputed Claims.**

The deadline for holders of Disputed General Unsecured Claims to file motions for temporary allowance of their claims for voting purposes pursuant to Bankruptcy Rule 3018(a) shall be the date that is ten (10) business days following the date that either: (i) the Bankruptcy Court enters an order approving the Disclosure Statement; or (ii) the Debtor files an application seeking the Bankruptcy Court's approval of the Disclosure Statement and confirmation of the Plan simultaneously.  Holders of Disputed General Unsecured Claims that fail to file a motion to temporary allowance by the deadline, or whose motions for temporary allowance are denied by the Court, shall not be entitled to vote to accept or reject the Plan.

## ARTICLE VI.

## IMPLEMENTATION

**Section 6.1     Appointment of the Plan Administrator.**

Upon the Effective Date of the Plan, the Plan Administrator shall be appointed and shall be the Estate's sole representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority, and responsibilities specified in the Plan, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code.  The Plan Administrator Agreement, in substantially the same form as that annexed hereto as Exhibit 1, shall be executed by the Debtor and delivered to the Plan Administrator on the Effective Date.

### Section 6.2    Retention of Professionals.

The Plan Administrator may employ professionals or other Persons as are necessary to assist in carrying out his or her duties, without further order of the Bankruptcy Court. The Plan Administrator shall not employ any professionals retained by the Debtor except as follows: (i) Mazars USA LLP, the Debtor's tax accountants, but solely for the purpose of preparing and filing any necessary tax returns; (ii) Meltzer, Lippe, Goldstein & Breitstone, LLP, the Debtor's special labor counsel, but only to the extent that the Plan Administrator believes such firm is necessary to further its work with respect to objections to Disputed Claims; and (iii) Klestadt Winters Jureller Southard & Stevens, LLP, but only for minimal transitional services and subject to maximum compensation of $5,000.

### Section 6.3    Plan Administrator Reserve.

As of the Effective Date, the Plan Administrator shall create a reserve account in the amount of One Hundred Thousand Dollars ($100,000) prior to making any Distributions, from which the Plan Administrator shall pay the costs of winding up the affairs of the Debtor, including without limitation, the Plan Administrator's fees, costs and expenses, and the fees of any professionals retained by the Plan Administrator to assist him or her in performing their remaining duties. If after all necessary fees, expenses and obligations of the Plan Administrator are paid in full, any funds remain with the Plan Administrator, such funds shall revert to the General Unsecured Claims Pool and shall be distributed in accordance with the terms of this Plan. The Plan Administrator Reserve is not a cap on the fees of the Plan Administrator and/or his or her professionals. However, the only other source for payment shall be from recoveries on any Causes of Action, including any disgorgement of Professional Fees previously paid to Professionals.

### Section 6.4    Monthly Fee and Expense Reports.

The Plan Administrator and any professional providing services on behalf of the Plan Administrator shall file with the Bankruptcy Court and provide to the U.S. Trustee, by electronic mail, reports of compensation earned and expenses incurred ("Compensation Reports") on a monthly basis. Compensation Reports shall contain summary charts describing the services provided, the terms of any retention, the compensation earned and the expenses incurred. Time records shall be (i) appended to the Compensation Reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by the project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10 of an hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate or on a "contingency fee" basis, the time entries shall be kept in hourly increments. All such compensation shall be subject to review by this Court if an objection is timely filed by any party in interest. To be timely filed, the objection must be filed with the Court within thirty (30) days following the filing (and with respect to the U.S. Trustee, emailing) of the Compensation Report. If no objection is timely filed, the Plan Administrator may pay the fees disclosed on the Compensation Report.

### Section 6.5    Corporate Action.

The Plan will be administered by the Plan Administrator and all actions taken under the Plan in the Debtor's name shall be taken through Plan Administrator in accordance with the provisions of the Plan.  After the Final Distribution is made, the Plan Administrator shall file a certification to that effect with the Bankruptcy Court (which may be included in the application for the entry of the final decree pursuant to the Bankruptcy Code), at which time the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further action by or on behalf of the Debtor or payments to be made in connection therewith.

### Section 6.6    Closing of the Chapter 11 Case.

After all Disputed Claims filed against the Debtor have become Allowed Claims or have been Disallowed, the Disqualification Motion has been resolved by final order of the Bankruptcy Court, any avoidance actions or adversary proceedings commenced by the Plan Administrator have been resolved by final order of the Bankruptcy Court, and all Cash has been distributed in accordance with the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case.

### Section 6.7    Winding Down of Affairs.

Following the Effective Date, the Debtor shall not engage in any business or take any actions, except those necessary to consummate the Plan and wind down the Debtor's affairs. On and after the Effective Date, the Plan Administrator may, in the name of the Debtor, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than the restrictions imposed by the Plan or the Confirmation Order.

### Section 6.8    Powers and Duties of the Plan Administrator.

As of the Effective Date, the Plan Administrator shall be appointed under section 1123(b)(3)(B) of the Bankruptcy Code, and shall serve in such capacity, and shall have comparable authority as a bankruptcy trustee of the Debtor as the exclusive representative of the Estate or any corresponding provision of federal or state laws and shall succeed to all of the Debtor's and Estate's rights.  The powers, rights, and responsibilities of the Plan Administrator, all of which shall arise upon the occurrence of the Effective Date, shall include, without limitation:

(a)    asserting, prosecuting, objecting to, pursuing, compromising and settling in accordance with the Plan Administrator's reasonable business judgment, all matters affecting the Estate, including, without limitation, Disputed Claims, Retained Causes of Action and/or other Causes of Action related thereto, and in particular may take a position with regard with the Pension Funds Claims Objection, the Seelig Claims Objection or any other contested matter that is pending at the time of confirmation of the Plan, subject to a motion for approval of such compromise or settlement and order of the Bankruptcy Court approving the same and provided that the Plan Administrator shall consult with the United States Trustee prior to entering into any compromise or settlement with respect to the Disqualification Motion;

16

(b)     asserting and enforcing all legal or equitable remedies and defenses belonging to the Debtor or its Estate, including, without limitation, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code;

(c)     reviewing and analyzing the Disqualification Motion, investigating the connections between the Debtor's owners and its prior attorneys and, if appropriate, supporting that portion of the Disqualification Motion that seeks the disgorgement of fees from W&M;

(d)     acting on behalf of the Debtor in all adversary proceedings and contested matters then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, dispute, or adjust any Claim and otherwise pursue actions involving Assets of the Debtor that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise, waived, relinquished or transferred in the Plan provided that any compromise or settlement shall be subject to a motion for approval of such compromise or settlement and order of the Bankruptcy Court approving the same;

(e)     taking such actions the Plan Administrator deems appropriate in his or her reasonable business judgment against any Person with respect to a Claim or Cause of Action and commencing any process or proceeding in the Bankruptcy Court or in any court of competent jurisdiction in accordance with applicable laws;

(f)     making Distributions to holders of all Allowed Claims, including Administrative, Priority, and Professional Fee Claims, in addition to payments to holders of Allowed Class 1 Claims, in accordance with the Plan;

(g)     proceeding with and employing all discovery devices permitted under applicable law, including Rule 2004 of the Bankruptcy Rules, to investigate Claims and Causes of Action;

(h)     investing Cash in accordance with section 345 of the Bankruptcy Code, withdrawing and making Distributions of Cash to holders of Allowed Claims and paying taxes and other obligations owed by Debtor or incurred by the Plan Administrator in accordance with the Plan;

(i)     coordinating turnover of property, if any, subject to rejected executory contracts or abandonment or liquidation of any retained Assets and disposing of, and delivering title to others of, or otherwise realizing value of, any remaining Assets;

(j)     overseeing compliance with the Debtor's accounting, finance, and reporting obligations and the filing of final tax returns, refund requests, audits, and other corporate dissolution documents, if required;

(k)     preparing financial statements and U.S. Trustee post-confirmation quarterly reports, until such time as the Bankruptcy Court enters an order (i) dismissing the Chapter 11 Case, (ii) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (iii) approving a final decree closing the Chapter 11 Case;

(l)    paying all other expenses to wind down Debtor's affairs subject to the terms of the Plan;

(m)    executing and delivering all documents, and taking all actions, necessary to consummate the Plan;

(n)    implementing and/or enforcing all provisions of the Plan; and

(o)    such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Confirmation Order or any other Bankruptcy Court order, or as necessary and appropriate to carry out the provisions of the Plan.

**Section 6.9    Distributions to Holders of Claims and Equity Interests.**

**(a)    Administrative Claim and Professional Fee Bar Date.**

The deadline for filing a claim on account of an Administrative Expense Claim Subject to Bar Date Order has passed, and any such claim for which a proof of claim was not timely filed shall be deemed disallowed.

The deadline for filing a claim on account of an or application for allowance of an Administrative Expense Claim Not Subject to Bar Date Order, including, without limitation, Administrative Expense Claims arising after March 31, 2018 and Professional Fee Claims, shall be the date that is thirty (30) days after the Effective Date of the Plan.

**(b)    Automatic Disallowance and Expungement of Certain Claims.**

All late-filed Claims shall be expunged and disallowed without any further notice to or action, order, or approval of the Bankruptcy Court.

**(c)    Deadline to Object to Claims.**

The deadline for a party in interest to file an objection to any Claim for a General Unsecured Claim, Priority Claim, or and Administrative Claim other than a Professional Fee Claim shall be the later of (a) the Effective Date, or (b) twenty-one (21) days after the date the proof of claim for such Claim is filed.

The Deadline for objecting to an application for Professional Fees shall be seven (7) days prior to the hearing on such application or such later date as listed in the notice of hearing with respect to such application or as permitted by the Bankruptcy Court.

**(d)    Method of Distribution on Allowed Claims.**

(i)    <u>General Provisions; Undeliverable Distributions</u>.  Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by the Plan Administrator at (a) the address of each Holder as set forth in the Schedules, unless superseded by the address set forth on Proofs of Claim filed by such Holder or

(b) the last known address of such Holder if no Proof of Claim is filed or if the Plan Administrator has been notified in writing of a change of address.

(ii)    If any Distribution by the Plan Administrator is returned as undeliverable, the Plan Administrator may, in his or her discretion, make reasonable efforts to determine the current address of the Holder of the Claim with respect to which the Distribution was made as the Plan Administrator deems appropriate, but no Distribution to any such Holder shall be made unless and until the Plan Administrator has determined the then-current address of such Holder, at which time the Distribution to such Holder shall be made to the Holder without interest.  Amounts in respect of any undeliverable Distributions made by the Plan Administrator shall be returned to, and held in trust by, the Plan Administrator until the Distributions are claimed or are deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code.  The Plan Administrator shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or the Plan Administrator Agreement.  On or about the time that the Final Distribution is made, the Plan Administrator may make a charitable donation with undistributed funds if, in the reasonable judgment of the Plan Administrator, the cost of calculating and making the Final Distribution of the remaining funds is excessive in relation to the benefits to the Holders of Claims who would otherwise be entitled to such Distributions, and such charitable donation is provided to an entity not otherwise related to the Debtor or Plan Administrator.

(iii)    <u>Minimum Distributions</u>.  Notwithstanding anything herein to the contrary, if a Distribution to be made to a Holder of an Allowed Claim would be $10 or less in the aggregate no such Distribution will be made to that Holder unless a request therefor is made in writing to the Plan Administrator no later than twenty (20) days after the Plan Administrator provides written notice that such Holder will not receive a Distribution.

(iv)    <u>Unclaimed Property</u>. Except with respect to property not Distributed because it is being held in a Disputed Claim Reserve, Distributions that are not claimed by the later of the expiration of six (6) months from the Effective Date or ninety (90) days after the date of a Distribution shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Debtor through the Plan Administrator, and the Claims with respect to which those Distributions are made shall be deemed to be automatically Disallowed, expunged, discharged and forever barred without further order of the Bankruptcy Court.  Nothing contained in the Plan shall require the Plan Administrator to attempt to locate any Holder of an Allowed Claim.  All funds or other property that vests or revests in the Debtor through the Plan Administrator pursuant to this Article shall be distributed by the Plan Administrator to the other Holders of Allowed Claims in accordance with the provisions of the Plan or the Plan Administrator Agreement.

(v)    <u>Manner of Cash Payments Under the Plan</u>. Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Plan Administrator, or by wire transfer from a domestic bank, at the option of the Plan Administrator.

(vi)    <u>Time Bar to Cash Payments by Check</u>. Checks issued by the Plan Administrator on account of Allowed Claims shall be null and void if not negotiated within 90 days after the date

of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Article 6.01(e) shall be made directly to the Plan Administrator by the Holder of the Allowed Claim to whom the check was originally issued.  Any Claim in respect of such voided check shall be made in writing on or before the later of six (6) months from the Effective Date or ninety (90) days after the date of issuance thereof.  After that date, all Claims in respect of void checks shall be disallowed, expunged, discharged and forever barred without further order of the Bankruptcy Court and the proceeds of those checks shall revest in the Debtor through Plan Administrator, as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code and be distributed in accordance with the terms of this Plan.

(vii)    <u>Compliance with Tax Requirements</u>. In connection with making Distributions under this Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Plan Administrator may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Plan Administrator to the appropriate authority.  If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such Holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article 6.01(a) of this Plan.

(viii)    <u>No Payments of Fractional Dollars</u>. Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

(ix)    <u>Setoff and Recoupment</u>. Except with respect to claims that are allowed pursuant to Articles 5.02 and 5.03 hereof, the Plan Administrator may, but shall not be required to, set-off against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that the Debtor or the Estate may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or the Estate of any right of set-off or recoupment that any of them may have against the Holder of any Claim.

(x)    <u>No Recourse</u>.  Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which, after application of the payment priorities established by the Plan, there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in such Class, no Claim holder shall have recourse against Debtor, the Estate, the Plan Administrator, or any of their respective professionals, consultants, officers, directors, or members, or their successors or assigns, or any of their respective property. Except as specifically stated otherwise in the Plan, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

**Section 6.10    Miscellaneous Distribution Provisions.**

(a)    **Preservation and Application of Insurance.**  The provisions of the Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against Debtor, any directors, trustees, or officers of Debtor, or any other Person, including, without limitation, insurance for Debtor's directors and officers.

(b)    **Record Date for Distributions to Holders of Claims.**  As of the close of business on the Confirmation Date, there shall be no further changes in the record holders of Claims for purposes of Distributions.  Distributions to Creditors entitled thereto shall be sent to Creditor's last known address as set forth on the proof of claim that was filed with the Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by Debtor or to such other address as may be designated by Creditor in writing to Debtor and its counsel.  The Plan Administrator shall have no obligation to recognize any transfer of Claims occurring after the Confirmation Date.

(c)    **Disputed Payments.**  If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Plan Administrator may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account to be held in trust for the benefit of such holder and such Distribution shall not constitute property of the Estate.  Such Distribution shall be held in escrow until entry of an order by the Bankruptcy Court or other court of competent jurisdiction affirming the alleged holder's identity or upon written agreement signed by all of the interested parties to such dispute.

(d)    **Resignation or Removal of the Plan Administrator.**  If the Plan Administrator resigns, is removed or becomes incapacitated, the Debtor shall designate a successor Plan Administrator, subject to Bankruptcy Court approval on notice to the United States Trustee.  If possible, the successor Plan Administrator shall be from the list of those considered by the Debtor in conjunction with creditors prior to the selection of the Plan Administrator.  The successor Plan Administrator shall be vested with the same rights, powers, duties and obligations as his or her predecessor.  No successor Plan Administrator shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessor.

(e)    **No Agency Relationship.** The Plan Administrator Agent shall not be deemed to be an agent for any holders of Claims in connection with the funds held or distributed pursuant to the Plan.  The Plan Administrator shall not be liable for any mistake of fact or law, error of judgment or for any act or omission of any kind unless arising from gross negligence, willful misconduct, or breach of fiduciary duty.  The Plan Administrator shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate.  Such indemnification shall apply to any and all claims arising out of the Plan Administrator's duties under the Plan, except to the extent that his or her actions constitute gross negligence, willful misconduct, or breach of fiduciary duty.  The Plan Administrator may conclusively rely, and shall be fully protected in acting upon, any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document, upon which he or she relies while believing it to be genuine and to have been signed or presented by the proper party or parties.  The Plan Administrator may also rely upon information previously generated by the Debtor and such additional information provided by former affiliates of the Debtor.  The liability of the Plan

Administrator shall be capped at the amount of fees that the Plan Administrator receives in connection with the Chapter 11 Case.

(f)     **Compensation to the Plan Administrator.**  The Plan Administrator shall receive compensation of $640 per hour.  The Plan Administrator may retain professionals as he or she deems necessary to assist him or her in carrying out their duties under this Plan and the Plan Administrator Agreement on such terms as the Plan Administrator deems fair and appropriate. However, the compensation of the Plan Administrator and any professionals shall be subject to review and an opportunity to object as set forth in Section 6.4 supra.

## ARTICLE VII.

## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

### Section 7.1     Binding Effect.

Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during the Chapter 11 Case and its successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has accepted (or has been deemed to accept) the Plan.

### Section 7.2     Term of Injunctions or Stays.

Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

### Section 7.3     Preservation of Causes of Action.

On the Effective Date, all Causes of Action, rights of setoff and other legal and equitable defenses of Debtor and Estate shall be transferred to and vested in the Plan Administrator, for the benefit of holders of all Allowed Claims, unless expressly released, waived, or relinquished under the Plan, the Confirmation Order or other order of the Bankruptcy Court.  No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Plan Administrator will not pursue a Cause of Action against them.

The Plan Administrator shall exclusively retain and may prosecute and enforce, and the Debtor expressly reserves and preserves for these purposes, in accordance with sections 1123(a)(5)(B) and 1123(b)(3) of the Bankruptcy Code, any Claims, demands, rights and Causes of Action.

No preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), claim-splitting or laches shall apply to such claims and Causes of Action by virtue of, or in connection with, the Confirmation, consummation or effectiveness of the Plan.

**Section 7.4     Injunctions.**

(a)     **Satisfaction of Claims.** The treatment to be provided for Allowed Claims shall be in full and final satisfaction, settlement, and release of each such Claim.

(b)     **Scope of Injunction.** Except as otherwise provided herein or in the Confirmation Order, as of the Effective Date all Persons that hold a Claim against the Debtor are permanently enjoined from taking any of the following actions against the Debtor, the Plan Administrator or any present and former attorneys or advisors of the Plan Administrator, on account of such Claim: (i) commencing or continuing in any manner any action or other proceeding with respect to a Claim or based upon a theory which arises out of such holder's Claim; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order with respect to a Claim; (iii) creating, perfecting or enforcing any lien or encumbrance with respect to a Claim; (iv) asserting a setoff, right of subrogation or recoupment of any kind with respect to a Claim, the Assets or other property of the Estate; and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan. Nothing shall preclude the holder of a Claim from pursuing any applicable insurance after the Chapter 11 Case is closed, from seeking discovery in actions against third parties or from pursuing third party insurance that does not cover Claims against the Debtor. For the avoidance of doubt, nothing in this Injunction shall limit the rights of a holder of a Claim to enforce the terms of the Plan.

Notwithstanding any provision to the contrary, no provision contained in the Plan, including sections 7.4 and 7.6 below, or the Confirmation Order shall be construed as discharging, releasing, or relieving any non-Debtor person or entity that is a member of a controlled group with Debtor from joint and several liability with respect to Debtor's withdrawal liability to the Local 584 Pension Trust Fund or the Milk Employees Pension Trust Fund (the "Pension Plans"). The Pension Plans or the Pension Benefit Guaranty Corporation shall not be enjoined or precluded from enforcing such liability or responsibility against any party, Person or Entity as a result of any of the provisions of the Plan or the Confirmation Order.

(c)     **Cause of Action Injunction.** On and after the Effective Date, all Persons other than the Plan Administrator will be permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) on account of, or respecting any Claim, debt, right, or Cause of Action that the Plan Administrator retains authority to pursue in accordance with the Plan; provided that nothing herein shall preclude the U.S. Trustee from continuing to prosecute its Disqualification Motion or the objection of certain creditors to the claims filed by Rodney and Wendy Seelig.

**Section 7.5     Compromise of Controversies.**

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all Claims arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, arising out of, relating to, or in connection with the business or affairs of or transactions with the Debtor. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing

compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, Estate, Creditors, and other parties in interest, and are fair, equitable, and within the range of reasonableness.

### Section 7.6    Post-Confirmation Activity.

As of the Effective Date, the Plan Administrator may conclude the winding down of the Debtor's affairs and the payment of Distributions without supervision of the Bankruptcy Court and subject to those restrictions expressly imposed by the Plan and Confirmation Order. Without limiting the foregoing, the Plan Administrator may pay any charges it incurs for taxes, professional fees, disbursements, expenses, or related support services, in connection with his or her respective duties after the Effective Date without application to, and approval of, the Bankruptcy Court, subject to the requirements of section 6.4 of this Plan.

## ARTICLE VIII.

## EXECUTORY CONTRACTS

### Section 8.1    Executory Contracts and Unexpired Leases.

To the extent not previously rejected on the Confirmation Date, but subject to the occurrence of the Effective Date, all prepetition executory contracts and unexpired leases of the Debtor that have not previously been assumed or rejected shall be deemed rejected by Debtor pursuant to the provisions of section 365 of the Bankruptcy Code.

### Section 8.2    Rejection Damages Bar Date.

Claims for damages based upon executory contracts and unexpired leases rejected pursuant to this Plan must be filed with the Clerk of the Bankruptcy Court and served upon Debtor and the Plan Administrator not later than thirty (30) days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court. Claims for damages not timely filed shall be forever barred and shall not be enforceable against Debtor, Estate, or the Plan Administrator. This provision applies only to executory contracts and unexpired leases rejected by this Plan and does not extend any previous Bar Dates established by Final Orders of the Bankruptcy Court.

### Section 8.3    Effect of Post-Confirmation Rejection.

Executory contracts and unexpired leases rejected pursuant to this Plan and entry of the Confirmation Order shall result in such rejection being a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

## ARTICLE IX.

### OCCURRENCE OF EFFECTIVE DATE

**Section 9.1      Conditions to Occurrence of Effective Date.**

The Effective Date for the Plan is the fourteenth (14th) business day following the date upon which the Confirmation Order becomes a Final Order; *provided, however*, that if that date falls on a Saturday, Sunday or legal holiday, or if a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the Confirmation Order is in effect.

If the Confirmation Order is vacated pursuant the Plan, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor, or (b) prejudice in any manner the rights of the Debtor or of any other party in interest.

## ARTICLE X.

### CONFIRMATBILITY AND SEVERABILITY

**Section 10.1   Confirmability and Severability of Plan.**

The Debtor reserves the right to alter, amend, modify, revoke, or withdraw the Plan.  If the Debtor revokes or withdraws the Plan, then nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or to prejudice in any manner the rights of the Debtor or any Persons in any further proceedings involving the Debtor.  A determination by the Bankruptcy Court that the Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Debtor's ability to modify the Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code.  Each provision of the Plan shall be considered severable and, if for any reason any provision or provisions therein are determined to be invalid and contrary to any existing or future law, the balance of the Plan shall be given effect without relation to the invalid provision, to the extent it can be done without causing a material change in the Plan.

## ARTICLE XI.

### ADMINISTRATIVE PROVISIONS

**Section 11.1   Retention of Jurisdiction.**

Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court may retain jurisdiction and authority for all purposes permitted under applicable law, including, without limitation to:

(a)      determine any motion, adversary proceeding, Cause of Action, Retained Causes of Action, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

(b)        ensure that Distributions to holders of Allowed Claims are accomplished as provided herein;

(c)        hear and determine objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including, without limitation, to hear and determine objections to the classification of Claims and the allowance or disallowance of Disputed Claims, in whole or in part;

(d)        consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)        enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)        issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, Confirmation Order or any other order of the Bankruptcy Court;

(g)        hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, and to remedy any defect or omission or reconcile any inconsistency in the Plan, Disclosure Statement, or any order of the Bankruptcy Court in such a manner as may be necessary to carry out the purposes and effects of the Confirmation Order;

(h)        hear and determine all matters relating to the Assets;

(i)        hear and determine all Professional Fee Claims;

(j)        hear and determine any timely filed objections to the allowance of any fees or expense reimbursements sought by the Plan Administrator and/or his or her professionals as set forth in Compensation Reports;

(k)        hear and determine the Disqualification Motion;

(l)        hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, Confirmation Order or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(m)        take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan, including any injunction provisions set forth herein, or to maintain the integrity of the Plan following consummation;

(n)        determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(o)     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(p)     enter a final decree closing the Chapter 11 Case;

(q)     recover any remaining Assets of Debtor and Estate;

(r)     hear and determine any matters for which jurisdiction was retained by the Bankruptcy Court pursuant to prior orders; and

(s)     hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code, and other applicable law.

### Section 11.2    Governing Law.

Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under the Plan shall be governed by the laws of the State of New York, without giving effect to principles of conflicts of law of New York.

### Section 11.3    Effectuating Documents, Further Transactions.

The Plan Administrator shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### Section 11.4    Waiver of Bankruptcy Rules 3020(e) and 7062.

The Debtor may request that the Confirmation Order include (i) a finding that Bankruptcy Rule 7062 shall not apply to the Confirmation Order, and (ii) authorization to consummate the Plan immediately after entry of the Confirmation Order.

### Section 11.5    No Discharge.

The Debtor will not receive a discharge under the Plan in accordance with section 1141(d)(3) of the Bankruptcy Code.

### Section 11.6    Headings.

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the meaning or interpretation of the Plan.

### Section 11.7    Payment of U.S Trustee Fees and Other Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date.  Any statutory fees accruing after the Confirmation Date shall be paid in accordance with

the Plan until the Bankruptcy Court enters an order (a) dismissing the Chapter 11 Case, (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (c) approving a final decree closing the Chapter 11 Case.

### Section 11.8    Governmental Carve-Out.

Nothing in the Plan or the Confirmation Order shall (i) effect a release of any Claim of, (ii) enjoin from bringing any Claim, suit, action or other proceedings by, or (iii) exculpate any party from any liability to, the United States Government or any of its agencies or any state or local government within the United States, arising under (v) the federal securities laws, (w) the Employment Retirement Income Security Act of 1974, as amended, (x) the Internal Revenue Code, (y) the environmental laws or (z) any criminal laws of the United States.

### Section 11.9 Disposal of Books and Records.

The Debtor's or the Plan Administrator's rights, as applicable, to seek authorization from the Bankruptcy Court for the destruction of books and records prior to the expiration of any statutory period requiring that such records be maintained are preserved.

### Section 11.10 Amendments.

(a)    **Pre-Confirmation Amendment.** The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order, provided the modified Plan and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements, including those set forth in section 1125.

(b)    **Post-Confirmation Amendment Not Requiring Re-solicitation.**    After entry of the Confirmation Order, the Plan Administrator may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided: (i) the Plan Administrator obtains Bankruptcy Court approval of such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, or treatment of any Class under the Plan.

(c)    **Post-Confirmation Amendment Requiring Re-solicitation.** After    the Confirmation Date and before the Effective Date of the Plan, the Plan Administrator may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a Class of Claims, provided: (i) the modified Plan meets applicable Bankruptcy Code requirements; (ii) the Plan Administrator obtains Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each Class affected by such modification; and (iv) the Plan Administrator complies with section 1125 of the Bankruptcy Code with respect to the modified Plan.

**Section 11.11  Successors and Assigns.**

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon such Person and further shall inure to the benefit of the heir, executor, administrator, successor, or assign of such Person.

**Section 11.12  Confirmation Order and Plan Control.**

To the extent the Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement or any other agreement entered into between the Debtor and any third party, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order controls the Plan.

**Section 11.13  Further Action.**

Nothing contained in the Plan prevents the Plan Administrator from taking such actions as may be necessary to consummate the Plan even though such actions may not specifically be provided for within the Plan.

**Section 11.14  Notices.**

Any notice required or permitted to be provided under the Plan, unless otherwise provided herein, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) overnight delivery service, postage prepaid, and addressed as follows:

| | |
|---|---|
| **For the Debtor**: | With a copy to: |
| G.A.F. Seelig, Inc. | Klestadt Winters Jureller |
| 229 East 85th Street, #U | Southard & Stevens, LLP |
| New York, New York 10028 | 200 West 41st Street, 17th Floor |
| Attention:  Rodney Seelig | New York, New York 10036 |
| | Attention: Fred Stevens |

**For the Plan Administrator:**
Alan D. Halperin
c/o Halperin Battaglia Benzija, LLP
40 Wall Street – 37th Floor
New York, New York 10005

**United States Trustee:**
United States Trustee
United States Department of Justice
201 Varick Street, Room 1006
New York, New York 10014
Attn: Jeremy S. Sussman, Esq.

### Section 11.15  Substantial Consummation.

On the Effective Date, the Plan shall be deemed substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### Section 11.16  Deemed Acts.

Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

Dated:  New York, New York
        April 2, 2021

                                    **G.A.F. SEELIG, INC., Debtor**


                            By:  _/s/ Rodney P. Seelig_____
                                 Rodney P. Seelig
                                 President

**Exhibit 1**
**to Amended Plan of Liquidation of G.A.F. Seelig, Inc.**

**PLAN ADMINISTRATOR AGREEMENT**

This Plan Administrator Agreement ("<u>Agreement</u>") is made this ☐☐ day of ☐☐☐☐☐, 2021 (the "<u>Effective Date</u>") by and among G.A.F. Seelig, Inc. (the "<u>Debtor</u>") and Alan D. Halperin (the "<u>Plan Administrator</u>")[1].  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Debtor's Second Amended Plan of Liquidation* dated April 2, 2021 (as amended or supplemented from time to time, the "<u>Plan</u>").

**RECITALS:**

A.     On December 30, 2017, the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 case (the "<u>Chapter 11 Case</u>") in the United States Bankruptcy Court for the Eastern District of New York under Case No. 17-46968 (ESS) (the "<u>Bankruptcy Court</u>").

B.     On ☐☐☐☐☐☐☐, 2021, the Bankruptcy Court entered an order confirming the Plan (the "<u>Confirmation Order</u>").  Unless otherwise set forth, capitalized terms used in this Agreement shall have the same meanings ascribed to them in the Plan and Confirmation Order.

C.     The Plan provides for the appointment of a Plan Administrator, who shall, as of the Effective Date, have the powers and duties set forth in the Plan and this Agreement.  The parties hereto acknowledge that the Plan Administrator shall succeed to the rights and obligations of the Debtor as set forth in the Plan and this Agreement.

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, the parties hereto agree as follows:

**ARTICLE I**

**ACCEPTANCE OF POSITION**

**1.1     Acceptance.**

By signing this Agreement, Alan D. Halperin accepts appointment as the Plan Administrator and agrees to observe and perform all duties and obligations imposed upon the Plan Administrator under the Plan, this Agreement, orders of the Bankruptcy Court, and applicable law.

---

[1] NOTE – At the time of filing this proposed Plan Administrator Agreement, the proposed Plan Administrator has not had an opportunity to review this agreement or the proposed Plan with her counsel.  It remains subject to his comments, review and approval, which will be timely sought.

# ARTICLE II

## THE PLAN ADMINISTRATOR

**2.1** **General Powers, Rights and Responsibilities.**

On the Effective Date, the Plan Administrator shall become the exclusive representative of the Debtor's Estate.   The powers, rights and responsibilities of the Plan Administrator shall include, without limitation:

(a)    asserting, prosecuting, objecting to, pursuing, compromising and settling in accordance with the Plan Administrator's reasonable business judgment, all matters affecting the Estate, including, without limitation, Disputed Claims, the Retained Causes of Action and/or other Causes of Action related thereto, subject to a motion for approval of such compromise or settlement and order of the Bankruptcy Court approving the same;

(b)    asserting and enforcing all legal or equitable remedies and defenses belonging to the Debtor or its Estate, including, without limitation, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code;

(c)    reviewing and analyzing the Disqualification Motion, investigating the connections between the Debtor's owners and its prior attorneys and, if appropriate, supporting that portion of the Disqualification Motion that seeks the disgorgement of fees from W&M;

(d)    acting on behalf of the Debtor in all adversary proceedings and contested matters then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, dispute, or adjust any Claim and otherwise pursue actions involving Assets of the Debtor that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise, waived, relinquished or transferred in the Plan;

(e)    taking such actions the Plan Administrator deems appropriate in his or her reasonable business judgment against any Person with respect to a Claim or Cause of Action and commencing any process or proceeding in the Bankruptcy Court or in any court of competent jurisdiction in accordance with applicable laws;

(f)    making Distributions to holders of all Allowed Claims, including Administrative, Priority, and Professional Fee Claims, in addition to payments to holders of Allowed Class 1 Claims, in accordance with the Plan;

(g)    proceeding with and employing all discovery devices permitted under applicable law, including Rule 2004 of the Bankruptcy Rules, to investigate Claims and Causes of Action;

(h)    investing Cash in accordance with section 345 of the Bankruptcy Code, withdrawing and making Distributions of Cash to holders of Allowed Claims and paying

taxes and other obligations owed by Debtor or incurred by the Plan Administrator in accordance with the Plan;

       (i)    coordinating turnover of property, if any, subject to rejected executory contracts or abandonment or liquidation of any retained Assets and disposing of, and delivering title to others of, or otherwise realizing value of, any remaining Assets;

       (j)    overseeing compliance with the Debtor's accounting, finance, and reporting obligations and the filing of final tax returns, refund requests, audits, and other corporate dissolution documents, if required;

       (k)    preparing financial statements and U.S. Trustee post-confirmation quarterly reports, until such time as the Bankruptcy Court enters an order (i) dismissing the Chapter 11 Case, (ii) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (iii) approving a final decree closing the Chapter 11 Case;

       (l)    paying all other expenses to wind down Debtor's affairs subject to the terms of the Plan;

       (m)    executing and delivering all documents, and taking all actions, necessary to consummate the Plan;

       (n)    implementing and/or enforcing all provisions of the Plan; and

       (o)    such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Confirmation Order or any other Bankruptcy Court order, or as necessary and appropriate to carry out the provisions of the Plan.

**2.2**    **Establishment and Maintenance of Accounts, Reserves, and Escrows**.

On the Effective Date (or as soon thereafter as practicable), the Plan Administrator shall establish the following accounts and reserves in accordance with the Plan: (i) the Plan Administrator Reserve; (ii) the Professional Fee Reserve; (iii) U.S. Trustee Fees Reserve; and (iv) the Disputed Claim Reserve.

**2.3**    **Distributions.**

Following the Effective Date, Distributions shall be made by the Plan Administrator as set forth in the Plan.

**2.4**    **Conversion of Assets to Cash**.

Subject to the terms of the Plan and this Agreement, pursuant to Section 1123(a)(5) of the Bankruptcy Code, as soon as is reasonably practicable following the Effective Date, the Plan Administrator shall sell or otherwise dispose of, and liquidate to or otherwise convert to Cash, any non-Cash assets of the Debtor's Estate in such manner as the Plan Administrator shall determine in its best judgment is in the best interests of the Debtor's Estate.

### 2.5    Investment of Cash.

Subject to the terms of the Plan and this Agreement, the Plan Administrator shall invest Cash, including, but not limited to, Cash held in any reserve established pursuant to the Plan, in (A) direct obligations of the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America; (B) money market deposit accounts, checking accounts, savings accounts or certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state thereof; or (C) any other investments that may be permissible under (i) Section 345 of the Bankruptcy Code or (ii) any order of the Bankruptcy Court. Such investments shall mature in such amounts and at such times as the Plan Administrator, in the Plan Administrator's discretion, shall deem appropriate to provide funds when needed to transfer funds or make payments in accordance with the Plan and this Agreement. The interest or other income earned on the investments of the Cash in any given reserve established pursuant to this Agreement, the Plan, or any order of the Bankruptcy Court shall constitute a part of such reserve, unless and until transferred or distributed pursuant to the terms of the Plan, this Agreement, or order of the Bankruptcy Court.

### 2.6    Compliance With Tax Withholding and Reporting Requirements.

With respect to all payments and Distributions made under the Plan, the Plan Administrator shall comply with all withholding and reporting requirements of any federal, state, local or foreign taxing authority and, in the event the Plan Administrator retains accountants, shall have the right to rely on such accountants' advice in connection with all tax matters.

### 2.7    Tax Requirements for Income Generated by Disputed Claims Reserve.

The Plan Administrator shall pay, or cause to be paid, out of the General Unsecured Claims Pool, any tax imposed by any federal, state, or local taxing authority on the income generated by the funds or property held in the General Unsecured Claims Pool.   The Plan Administrator shall file, or cause to be filed, any tax or information return related to the General Unsecured Claims Pool that is required by any federal, state, or local taxing authority.

### 2.8    Books, Records, and Tax Returns.

The Plan Administrator shall preserve for the benefit of the Estate all documents and files, including electronic data hosted on remote servers that are necessary to the prosecution of the Retained Causes of Action and Claims resolution process (the "Retained Information"). After the Effective Date, the Plan Administrator shall preserve the Retained Information until the date that is one (1) year following the closing of the Chapter 11 Case. On the Effective Date, the Plan Administrator shall be permitted to abandon (with or without destruction) any information that is not Retained Information.

### 2.9    Post-Effective Date Reports and Fees.

Following the Effective Date and until the Bankruptcy Case is closed, not less than once every quarter, the Plan Administrator shall be responsible for the filing of all post-Effective Date

reports required during such periods with the U.S. Trustee and payment from the Debtor's Estate of all post-Effective Date fees charged or assessed against the Estate under 28 U.S.C. §1930 during such periods, together with applicable interest pursuant to 31 U.S.C. § 3717.

### 2.10    Reliance by Plan Administrator.

The Plan Administrator may rely, and shall be fully protected in acting or refraining from acting if it relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that it reasonably believes to be genuine and to have been signed or presented by the proper party or parties or to have been sent by the proper party or parties, and the Plan Administrator may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein. The Plan Administrator may consult with counsel and other professionals with respect to matters in their area of expertise, and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or not taken by the Plan Administrator. The Plan Administrator shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon, except acts or omissions resulting from willful misconduct, gross negligence, or fraud as determined by Final Order of the Bankruptcy Court; *provided however*, that this limitation of liability shall not release or absolve any professional for conduct that may give rise to a claim against the Plan Administrator.  The Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan, or any other document executed in connection therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.

### 2.11    Reliance by Persons Dealing with the Plan Administrator.

In the absence of actual knowledge to the contrary, any person dealing with the Debtor and the Estate shall be entitled to rely on the authority of the Plan Administrator to act on behalf of the Debtor and shall have no obligation to inquire into the existence of such authority.

### 2.12    Removal of Plan Administrator.

The Plan Administrator may not be removed or terminated for any reason without approval of the Bankruptcy Court.  The Bankruptcy Court shall retain jurisdiction to enforce this provision upon a motion and proper notice to the Plan Administrator and its counsel. The Plan Administrator will continue to serve after its removal until the earlier of (i) the time when appointment of a successor Plan Administrator becomes effective; or (ii) such date as the Bankruptcy Court otherwise orders.

### 2.13    Succession Matters.

If the Plan Administrator is removed by order of the Bankruptcy Court, resigns its position, or upon its cessation of business or dissolution, the Bankruptcy Court shall designate a successor Plan Administrator. Such successor Plan Administrator shall be deemed to succeed the Plan Administrator in all respects, including, but not limited to, all litigation and other matters related to prosecution of the Retained Causes of Action, without need for further order of the Bankruptcy

Court. In the event of resignation or removal of the Plan Administrator, it shall promptly (a) execute and deliver such documents, instruments and other writings as reasonably requested by the successor Plan Administrator or as ordered by the Bankruptcy Court; (b) turn over to the successor Plan Administrator all property of the Estate in its possession, custody and control, including, but not limited to all funds held in bank accounts, and all files, books and records and other documents and information related to the Debtor's Estate, including the Retained Information; and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by the successor Plan Administrator. The successor Plan Administrator may, in its discretion, retain such Professionals as it deems necessary, including the Professionals of the departing Plan Administrator. If the Plan Administrator is replaced, the Professionals retained by the Plan Administrator shall be entitled to payment of their reasonable, undisputed fees and expenses through the date of the Plan Administrator's replacement as approved by the Bankruptcy Court or as otherwise ordered by the Bankruptcy Court.

### 2.14    Compensation of Plan Administrator and Professionals.

The Plan Administrator and the Plan Administrator's retained professionals shall be compensated from the Plan Administrator Reserve, or from any recoveries of the Estate from Causes of Action. The Plan Administrator shall receive compensation of $640 per hour.

The Plan Administrator may employ professionals or other Persons as are necessary to assist in carrying out his or her duties, without further order of the Bankruptcy Court. The Plan Administrator shall not employ any professionals retained by the Debtor except as follows: (i) Mazars USA LLP, the Debtor's tax accountants, but solely for the purpose of preparing and filing any necessary tax returns; (ii) Meltzer, Lippe, Goldstein & Breitstone, LLP, the Debtor's special labor counsel, but only to the extent that the Plan Administrator believes such firm is necessary to further its work with respect to objections to Disputed Claims; and (iii) Klestadt Winters Jureller Southard & Stevens, LLP, but only for minimal transitional services and subject to maximum compensation of $5,000.

The Plan Administrator and any professional providing services on behalf of the Plan Administrator shall file with the Bankruptcy Court and provide to the U.S. Trustee, by electronic mail, reports of compensation earned and expenses incurred ("Compensation Reports") on a monthly basis. Compensation Reports shall contain summary charts describing the services provided, the terms of any retention, the compensation earned and the expenses incurred. Time records shall be (i) appended to the Compensation Reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by the project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10 of an hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a "flat" rate or on a "contingency fee" basis, the time entries shall be kept in hourly increments. All such compensation shall be subject to review by this Court if an objection is timely filed by any party in interest. To be timely filed, the objection must be filed with the Court within thirty (30) days following the filing (and with respect to the U.S. Trustee, emailing) of the Compensation Report. If no objection is timely filed, the Plan Administrator may pay the fees disclosed on the Compensation Report.

## ARTICLE III

## RELEASES AND INDEMNIFICATION; INSURANCE

### 3.1    Releases; Indemnification.

The Plan Administrator and each of its designees, employees or Professionals or any duly designated agent or representative of the Plan Administrator or their respective employees, shall not be liable for any act or omission taken or omitted to be taken in their respective capacities other than for acts or omissions resulting from willful misconduct, gross negligence, or fraud as determined by Final Order of the Bankruptcy Court.  The Plan Administrator may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such attorneys, or any Final Order of the Bankruptcy Court.  Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and its determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud as determined by Final Order of the Bankruptcy Court.  The  Estate shall indemnify and hold harmless the Plan Administrator and its designees and Professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of the Plan; *provided however*, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

### 3.2    Insurance.

The Plan Administrator shall be authorized to obtain and pay for all reasonably necessary insurance coverage, including for its agents, representatives, employees, or other independent contractors, or the Estate, including, but not limited to, coverage with respect to (i) any property that is or may in the future become the property of the Estate and (ii) the liabilities, duties, and obligations of the Plan Administrator and its agents, representatives, employees, or other independent contractors under this Agreement and any other indemnified parties, in the form of an errors and omissions policy or otherwise, the latter of which insurance coverage may, at the sole option of the Plan Administrator, remain in effect for a reasonable period (not to exceed seven years) after the termination of this Agreement.

## ARTICLE IV
## TERMINATION

### 4.1    Termination.

This Agreement shall terminate upon the later of (a) thirty (30) days after the distribution of all of the assets of the Estate in accordance with the Plan and (b) the closing of the Chapter 11 Case.

**4.2**     **Obligations of the Plan Administrator upon Termination**.

The Plan Administrator shall preserve the Retained Information until the date that is one (1) year following the closing of the Chapter 11 Case. Except as otherwise specifically provided herein, after the termination of this Agreement pursuant to Section 4.1 above, the Plan Administrator shall have no further duties or obligations hereunder.

## ARTICLE V

## MISCELLANEOUS PROVISIONS

**5.1**     **Descriptive Headings**.

The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

**5.2**     **Amendment and Waiver**.

This Agreement may not be amended except by an instrument executed by the Debtor and the Plan Administrator or by order of the Bankruptcy Court.

**5.3**     **Governing Law**.

This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction. In the event of a conflict between the terms of this Agreement and the Plan and/or Confirmation Order, the Plan and/or Confirmation order shall govern.

**5.4**     **Counterparts; Effectiveness**.

This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement. This Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.

**5.5**     **Severability; Validity**.

If any provision of this Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, and to such end, the provisions of this Agreement are agreed to be severable.

**5.6**     **Notices**.

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if by electronic mail, or if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended at such

address as set forth below (or such other address for a party as shall be specified by like notice):

**If to the Plan Administrator:**
Alan D. Halperin
c/o Halperin Battaglia Benzija, LLP
40 Wall Street – 37th Floor
New York, New York 10005

**With a copy to:**

### 5.7    <u>Relationship to Plan</u>.

The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan. To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan. In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control; *provided, however*, that any amendment to this Agreement approved by the Bankruptcy Court following substantial consummation (as such term is used in Section 1127(b) of the Bankruptcy Code) of the Plan shall control over provisions of the Plan.

### 5.8    <u>Retention of Jurisdiction</u>.

As provided in Article XI of the Plan, the Bankruptcy Court shall retain jurisdiction over the Estate and the Debtor to the fullest extent permitted by law, including, but not limited to, for the purposes of interpreting and implementing the provisions of this Agreement.

### 5.9    <u>Effective Date</u>.

This Agreement shall become effective on the Effective Date of the Plan.

**IN WITNESS WHEREOF**, the parties have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers as of the date first above written.

Dated:   New York, New York
_____ \_\_, 2021

**G.A.F. SEELIG, INC., Debtor**

By: _____
Rodney P. Seelig
President

Dated:   New York, New York
_____ \_\_, 2021

**ALAN D. HALPERIN, Plan Administrator**

By: _____
Alan D. Halperin